ASSAD MICHAEL *vs.* FRANCIS L. McGOVERN, D. S.

APRIL 7, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J.   This is an action of replevin that was tried before a justice of the superior court sitting with a jury.   At the conclusion of the plaintiff's case, the defendant rested without offering any testimony.   Both plaintiff and defendant thereupon moved for a direction of a verdict. The case is before us on plaintiff's exceptions to the action of the trial justice in directing a verdict for the defendant and in refusing to direct a verdict for the plaintiff.

The plaintiff, Assad Michael, has conducted a dry goods business at 252 Atwells avenue in the city of Providence for about twenty-five years.   Peter Michael, the brother of Assad, was engaged in the same line of business at 27 Arthur

avenue. The evidence is clear that the relations between the two brothers were close and that Peter relied upon his brother for both guidance and financial assistance. The plaintiff testified that on March 7, 1930, his brother owed him $9,807.75 for money advanced and goods sold between 1921 and 1929. He further testified that prior to March 7, 1930, he asked his brother for the money and that as a result of this request Peter conveyed to him his real estate, which was subject to a mortgage of $11,000, at an agreed valuation of $17,000. On March 10, 1930, the plaintiff received from his brother a bill of sale of all the goods and merchandise in the store at 27 Arthur avenue at an estimated value of $1,500 in further payment of his claim. It is admitted that the plaintiff made no attempt to comply with the provisions of chapter 311, general laws 1923, known as the Sales in Bulk Act, when his brother transferred his entire stock of goods to him.

In May, 1929, Peter Michael, desiring to borrow some money from the Eagle Loan Company, asked and succeeded in getting a friend, Harry Jacobs, and a Mrs. Razza, to sign a note with him, as co-makers, payable to that company in the sum of $1,800. When Peter failed to pay the note, the Eagle Loan Company brought suit on February 20, 1930, against all the parties on the note and attached the real estate of Harry Jacobs only. Between this date and March 10, 1930, when Peter Michael transferred his entire stock of merchandise to his brother, Peter did absolutely nothing with reference to his note to the Eagle Loan Company. The result was that on March 12, 1930, Harry Jacobs paid the entire amount of $1,906.13 due to the loan company on the note and then caused a writ of attachment to be issued against Peter Michael in an action to recover this money. By virtue of that writ, Francis L. McGovern, a deputy sheriff and the defendant in this case, attached the stock and fixtures in the store at 27 Arthur avenue as the property of Peter Michael. The plaintiff then brought this action of replevin.

The plaintiff testified that the first knowledge he had of his brother's transaction with the Eagle Loan Company was "after they started suing one another . . . when I knew that my brother went as comaker and signed the note I went ahead and got the property. . . . I was afraid of my money. He owed me $11,000." Peter Michael, who was a witness for the plaintiff, admitted that he generally consulted his older brother in regard to his business affairs; that he informed him about signing a note with the Eagle Loan Co. perhaps "a month or two" before February 20, 1930, and that about the time that suit was brought by the Eagle Loan Co. he agreed to pay his brother what he owed him by transferring all his property to him to prevent an attachment by any one else. The record further discloses that an automobile registered in Peter Michael's name, which was also attached as his property in the suit of Harry Jacobs against him, was replevied by this plaintiff's wife.

The plaintiff justifies the transfer of the entire stock of merchandise by his brother to him as a permissible preference at common law and contends that Jacobs did not become a "creditor" of Peter Michael within the meaning of that word as used in chapter 311, G. L. 1923, known as the Sales in Bulk Act, until Jacobs actually paid the note and acquired a present cause of action. In arguing for this conclusion he urges that the act is in derogation of the common law and therefore should be strictly construed. It is our understanding that all that this rule of construction implies is that a statute that modifies the common law is not to be presumed to alter it further than may be fairly and reasonably inferred from the language, nature and purpose of the act. In *Gibson* v. *Jenney*, 15 Mass. 205, at page 206, the court says: "It is said that statutes, made in derogation of the common law, are to be construed strictly. This is true, but they are also to be construed sensibly, and with a view to the object aimed at by the legislature."

In *Grygiel* v. *Marcille*, 51 R. I. 109, this court held that the principal maker and the accommodation maker of a promissory note stand in the relation of principal and surety. A surety, on paying a debt, is entitled to stand in the place of the creditor, and to have all the rights which he has for the purpose of obtaining reimbursement from the real debtor. It is a generally accepted rule that an accommodation maker, who has been compelled to pay the holder of a negotiable instrument, is subrogated to the rights of the holder. 60 C. J. 737, §44. The plaintiff in this case concedes, and properly so, that the transfer of March 10, 1930, by Peter Michael to his brother Assad, was invalid as against the Eagle Loan Co., which was then an admitted creditor of Peter Michael. When Jacobs, as surety and after the bringing of legal proceedings against him, paid the Eagle Loan Co., he was by operation of law subrogated to the rights and remedies available to the loan company against Peter Michael. Failure to comply with the provisions of the Sales in Bulk Act made the attempted transfer by Peter Michael to his brother Assad fraudulent and void as against the Eagle Loan Co. We see no reason why such transfer should have any greater validity as against Jacobs after he paid the note. It is our opinion, therefore, that the transfer was invalid as against Jacobs, when he attached the merchandise in question.

The exception of the plaintiff to the refusal of the trial court to direct a verdict in his favor and his exception to the granting of defendant's motion to direct a verdict are overruled.

The case is remitted to the superior court with direction to enter judgment for the defendant upon the verdict as directed.

*Pettine, Godfrey & Cambio*, for plaintiff.
*Benjamin Cianciarulo*, for defendant.